<u>VIA ECF</u>

June 3, 2008

Hon. Richard J. Holwell
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

Re:      <u>United States of America v. Alfredo Matos</u>
         07 CR 380-01 (RJH)

Dear Judge Holwell:

I am counsel for Alfredo Matos, who is scheduled to be sentenced on June 13, 2008 at 10:00 AM.

On October 9, 2007 Alfredo Matos entered into a Plea Agreement and pled guilty to Count 2 of Indictment 07 CR 380-01 (RJH) charging him with having distributed approximately 49.9 grams of crack cocaine in violation of Title 21 USC §§ 812, 841 (b) (1) (B) and 846. The Agreement permits defense counsel to request that this Court not impose a guidelines sentence and rely upon the factors enumerated in United States Code Title 18 § 3553(a)

The statutory penalty for this crime is a maximum of 40 years imprisonment and a mandatory minimum of 5 years imprisonment; a mandatory minimum of 4 years to life supervised release; a maximum fine of $2,000,000.00 and a $100.00 special assessment.

<u>Guidelines Calculation:</u>

Mr. Matos concurs with the Government and Probation Department that his base offense level is 28, United States Sentencing Guidelines (U.S.S.G.) § 2D1.1 (c) (6) and submits that pursuant to § 3E1.1 (a) and (b) a three-level reduction is warranted for his acceptance of responsibility. This results in an applicable Guideline total offense level of 25. All Guideline references are predicated upon the November 1, 2006 version of the Guidelines and while the PSI references the Plea Agreement it does not address the changes resulting from the Supreme Court's decision in <u>Booker/Fanfan</u>. For that reason it does not address the factors set forth in Title 18 U.S.C. § 3553(a).

Mr. Matos' Criminal History Category of III suggests an advisory Guidelines sentence of 70 to 83 months imprisonment. In calculating Mr. Matos' Criminal History Category, the Probation Department considered a history comprised of five (5) misdemeanor convictions. Four occurred in the years 1999 and 2000, when he was twenty-one years of age. The last occurred a year later and resulted from ringing the wrong door bell buzzer while waiting for a friend in the vestibule of an apartment building. Mr. Matos crossed paths with an individual who was incensed by his mistake, a fist fight ensued and Mr. Matos was arrested. No weapon was involved. Mr. Matos pled guilty to simple assault, received a conditional discharge and complied with the conditions of that sentence without incident.

For reasons set forth below counsel requests that this Court not impose a guidelines sentence.

*Sentencing Factors Pursuant To 18 USC § 3553*:

*Background and History of this Case*:

Alfredo Matos has never been convicted of a felony and none of the misdemeanor convictions resulted in a jail sentence longer than 10-days. The birth of his daughter, Ilines Matos on October 3, 2001 had a significant effect on Mr. Matos' life. With the birth of Ilines, presently six years old, Alfredo assumed the responsibilities that accompanied becoming father and parent. From late 2002 through 2006 he made a number of serious attempts to stop using drugs and remove himself from his former existence. For most of his life he has been employed and has endeavored to live up to the expectations of his mother, Carmen, Luisa Yaneris Aquino, his romantic interest and their daughter.

Counsel submits that even a sentence at the bottom end of the Guideline range of 70 to 83 months would be severe and tragic. Mr. Matos is a young man. The information presented the PSR and from family members, indicates that he is not someone who has lived his life as some kind of gangster or someone lost to the world of drugs. For much of his life he has been a hard-working individual and has attempted to support his family to the extent his employment allowed him to.

Not long before Mr. Matos' arrest, the Supreme Court and the Sentencing Commission changed the rules governing the ways federal court may impose sentence. First, the Supreme Court held that the mandatory regime is unconstitutional, and remedied this unconstitutionality but rendering the guidelines advisory. See *United States v. Booker*, 543 U.S. 220, 245 (2005). Moreover, the Court has also specifically noted that in sentencing under the now-advisory guidelines, a sentencing court may take into account its own view that the penalties for distributing crack are excessive in relation to those for other similar drugs. See *Kimbrough v United States*, 128 S. Ct. 558 (2007).

Second, on November 1, 2007 the sentencing Commission has adopted a change in the crack guidelines that "reduces the base offense level associated with each quantity of crack by two levels." Id at 569, citing Amendments to the Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28571-28572 (2007). In Mr. Matos' case his base offense level was reduced to 28 rather than 30, see U.S.S.G. § 2D1. (c)(4) resulting in a final offense level of 25 and the recommended sentence of 70 to 83 months. The Commission has also ruled that this change in the guidelines would be applicable retrospectively.

In *Kimbrough v. United States*, *supra*, the Supreme Court held that judges are free to impose a nonguidelines sentence on the basis of policy disagreements with the guidelines, such as the crack

guidelines. While "[a] district judge must include the Guidelines range in the array of factors warranting consideration", the Court held, "[t]he judge may determine . . . that, in the particular case, a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing." Id. at 564.

In _Gall v.United States_, 128 S.Ct. 586 (2007) the Court also held that "while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences - whether inside, just outside, or significantly outside the Guidelines range - under a deferential abuse of discretion standard." Id. at 591. The Court specifically "reject[ed] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Id. at 594-595. To hold otherwise would "come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." Id. at 595. Indeed, the Court held that the sentencing judge "may not presume that the Guidelines range is reasonable." Id. at 590.

> _Section 3553 (a) of Title 18 requires a district court to "impose a sentence, sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" and to "consider" the following factors "in determining the particular sentence to be imposed":_
>
> > _(1) the nature and circumstances of the offense and the history and characteristics of the defendant_;
> >
> > _(2) the need for the sentence imposed -_
> >
> > _(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;_
> >
> > _(B) to afford adequate deterrence to criminal conduct;_
> >
> > _(C) to protect the public from further crimes of the defendant; and_
> >
> > _(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;_

The Guidelines are only one among a variety of statutory factors to be considered.

_Title 18 § 3553 (a) (1):  "the nature and circumstances of the offense" and "the history and characteristics of the defendant"_

### History and Characteristics of the Defendant:

The personal history of Mr. Matos is discussed in detail in his the Pre-sentence Investigation Report ("PSR") is essentially accurate. Certain portions of that history bear mentioning in light of current sentencing standards. We request that the Court consider the facts and arguments set forth below.

Alfredo Matos had a relatively poor economic upbringing. His late father Alfredo Matos, Sr. died on 1992 of a heart attack. Because of the economic and employment problems that existed in the Dominican

Republic, Mr. Matos immigrated to the United States on May 16, 1995. He is a legal permanent resident INS ████████████ and Social security number is 0████████. Since he arrived here in 1995, he's never returned to the Dominican Republic and has resided in either the Bronx or Manhattan.

Mr. Matos' entire family presently resides in the United States. He has over forty (40) family and extended family members living in the New York Metropolitan area. Most are American citizens. They include: his grandmother, Estaudilia Matos, his mother Carmen Matos as well as 7 aunts, 6 uncles and 19 cousins. Ms. Aquino's three sisters and their two children reside in New York City and are all citizens.

In fashioning a sentence this Court must consider what lies ahead for him, including the "punitive consequences" of imprisonment and possible separation from his mother, grandmother, Luisa Yaneris Aquino and their two young daughters.

Counsel submits that Mr. Matos' eighth grade education coupled with learning and language difficulties made it difficult for him to adjust to the United States. These same issues made it difficult for him to obtain anything but low paying factory work. After arriving in the United States he spent approximately five years traveling to and from New Jersey where he worked in numerous factories. In 2006 he obtained employment with Guardian Service Industries 161 Avenue of the Americas, New York, NY and performed maintenance for six month period. There is no reason to believe that he will not become a productive member of society.

Mr. Matos has no history of mental or emotional problems. For most of his life he did not use illegal narcotics, but not long after he arrived in the United States he started smoking marijuana regularly. Several years later he began using cocaine and it is truly unfortunate that he has never been treated for substance abuse.

Over the past year I have had many conversations with him. He has asked me to inform this Court that he is truly sorry for what he did and recognizes that by selling drugs he has let his friends and family down. He wants the Government to know that he is sorry for his conduct and appreciates that he has hurt everyone around him. Mr. Matos has been incarcerated for more than one year and this experience has been devastating.

Counsel understands that the enforcement of the narcotics laws is important, but in this case consideration must be given to the type of person Alfredo Matos has been prior to this case. Counsel urges this Court to additionally consider the consequences that will result from possibly being separated from his mother and family and the effect of being banished to a nation he has no attachment to. Mr. Matos has a difficult time appreciating just how he will be able to endure extended separations from the family he loves.

_The Nature and Circumstances of the Offense:_

Although the offense is of a serious nature it is important to note his crime was not violent and resulted in no harm to others. Mr. Matos' January 26, 2007 involvement began when he received a telephone call from the CW-1. During that conversation Mr. Matos became convinced that he somehow knew each other. They exchanged telephone numbers and thereafter additional calls. Because Mr. Matos didn't have any crack cocaine of his own and wanted to earn a few dollars, he agreed to help the CW-1 make the purchase by locating a source of supply. After locating a source, CC-1 (Jose), his source refused to "front" Mr.

Matos the crack cocaine. It was agreed that the purchase would be consummated that evening and that CC-1 (Jose) must be present.

That evening Alfredo Matos, another individual, CC-1(Jose) met with CW-1 inside CW-1's parked car near 1571 Undercliff Avenue, Bronx, NY to complete the transaction. When it was determined that CC-1 (Jose) had arrived with the crack cocaine to complete the transaction, CW-1 signaled the DEA agents that he had the drugs in his possession. Mr. Matos never touched the crack cocaine or the money. Mr. Matos acted as a "go between" participating in discussions regarding price and availability -- or lack of availability – of crack cocaine.

When the agents approached the vehicle to make the arrests CC-1 attempted to escape but was arrested. Alfredo Matos exited the vehicle and fled. CW-1 informed the agents that it was CC-1 who had handed him the plastic bag containing the crack cocaine. Alfredo Matos was arrested on April 3, 2007 and identified by CC-1(Jose) According to a DEA chemist the crack cocaine weighed approximately 49.9 grams.

While the distribution of approximately 49.9 grams of crack cocaine is a serious offense, the sentence recommended by the Probation Department and the Government is excessive.  Mr. Matos has never before suffered extended incarcerated and has already learned his lesson. There is no reason to believe he will engage in future criminal activity. Alfredo Matos' incarceration has afforded him ample time to reflect upon the consequences of his actions, not only for himself but also for family and friends. His incarceration has made his family and those around more attuned to the problems that contributed to his actions. When he is released from prison, those people will assist him in leading a law-abiding life.

*Alfredo Matos' Crime:*

Alfredo Matos by his plea and during his probation interview has admitted to the crime. The facts however, demonstrate that he was no more than a low level "street broker" possessing no drugs of his own. This assessment is supported by the fact that on January 26, 2006 he lacked a pre-existing association with any individual or source with enough past experience with him to "trust" or "front" him drugs worth approximately $1,500.00 retail.

In fact it was a lack of a pre-existing relationship and refusal to let Mr. Matos act alone that led to the arrest of the source, CC-1(Jose). On January 26, 2006, CC-1(Jose) rejected the option of giving Mr. Matos the drugs and insulating himself from arrest and chose to participate directly in the transaction in order to protect his investment.

While it may be argued that the actions of individuals like Mr. Matos normally serve to insulate the producers, importers, wholesalers from law enforcement; it is also true that individuals like Mr. Matos assume risks substantially out of proportion to the reward. Alfredo Matos was "small time" and for that reason unable to access a source willing to momentarily part with small quantity of drugs in this case.

Alfredo Matos acted as "a go between" and under New York Law, classified as an agent of the buyer and not a seller. Because he had not suffered a prior felony a conviction, he would have been probation eligible or at worst received diversionary treatment.

It is appalling when individuals like Mr. Matos, unwittingly trade 5 to 10 years of their lives as well as their future to make $100 to $200. Run by those insulated and often ensconced in foreign countries, it is individuals like Mr. Matos who agree to get in harms way because they both desperate and ignorant of the actual risks to themselves.

Counsel submits that in Alfredo Matos' case we are dealing with a non-violent offender who unwittingly had become dependant upon those who willingly took advantage of his circumstance, lack of education and marginal prospects for economic advancement. These factors should mitigate his sentence. By any risk to reward comparison his role was servile, low-level risking imminent arrest for a minimal reward.

Few can argue with the proposition that all of us have vulnerabilities and under certain circumstances we may become susceptible to conduct that under normal circumstances would be alien to us. This was true for Alfredo Matos at the time he was approached in this case. He was out of work and desperate. He took the wrong route.

We submit that an individualized approach to sentencing is warranted in this case and respectfully urge this Court to make the refined assessment required. We moreover contend that there is no correlation between the quantity distributed in this case and Alfredo Matos' past involvements and that it was only because of the quantity requested that Mr. Matos had to call upon CC-1(Jose), an individual he knew only because he'd purchased marijuana from him in the past.

*The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment for the Offense:*

It is likely that Mr. Matos will be deported from the United States after serving his sentence and that his alien status may make him ineligible for release to a drug treatment program or halfway house. Moreover, he will probably spend three to six months following his in a federal immigration facility.  We respectfully request that the Court consider these factors in determining an appropriate sentence.

*The Need to Avoid Disparities in Sentencing:*

Counsel submits that many of his previous arguments apply to sentencing disparity. The amount of drugs sought by CW-1 and the limited role Mr. Matos played in putting the purchaser and source together. Of course, the disparity between punishments for powder and crack cocaine offenses should be of concern to this Court.

 *The Need to Provide Restitution to Victims of the Offense*

 There are no victims of the offense; therefore, restitution is not called for in this case.

*(D) To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner;*

The environment at the MDC has can hardly be considered productive or positive  The lack of exercise facilities, lack of fresh air, and overcrowded and unsanitary living conditions have been detrimental to his physical condition.

Mr. Matos has a history of employment doing factory work, maintenance work, and construction. His job prospects, either in the United States or elsewhere, will be diminished by a lengthy sentence. If he were to be incarcerated for a long period of time his age might be a significant disadvantage in the job market.

*Conclusion:*

We submit that the advisory Guidelines range of 70 to 83 months is excessive and would be contrary to the mandate of Section Title 18 § 3553 (a), which is to impose a sentence, sufficient, but no greater than necessary***."
Counsel understands that the enforcement of the narcotics laws is important, but in this case consideration must be given to the type of person Alfredo Matos has been prior to his involvement and will be following his confinement. Counsel urges this Court to sentence Mr. Matos to a sentence below the mandatory minimum and posits that it is merely a matter of time before Congress and the Guidelines Commission recognize the unfairness of even 60 months. A 60 month sentence in Mr. Matos' case is excessive and far too severe.

In actuality Alfredo Matos may face a lifetime sentence because of his likely banishment from the United States. He will forever have to endure extended separations from his children, his family and those he loves for the remainder of his life. This is a form of suffering very few individuals and families can bear.

Counsel urges this Court to consider the consequences resulting from being separated from his mother, Carmen Matos, who suffers from breast cancer, his family, children, and a host of other relatives who live in the United States. Alfredo Matos will be banished to a country he no longer has any connection with or attachment to.

Counsel urges, that this Court to impose a sentence that incorporates positive recommendations and the promise of help and avoid the severe sentencing consequences resulting from this type of conviction.

Mr. Matos has no assets or liabilities and it requested that the Court recommend that Bureau of Prisons designate a facility that will allow him to visit with his mother who is presently suffers from cancer.

Respectfully submitted,


Jack G. Goldberg, Esq.

JGG/mc

cc. Assistant United States Attorney
   Arlo Devlin-Brown, Esq. (via fax)

   United States Probation Officer
   Nicole L. Guite (via fax)